UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEZIRE TRIP PRIVATE LTD., | CASE NO. C16-1854JLR |
| Plaintiff, | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| JOHN F. KELLY, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court are cross-motions for summary judgment by Plaintiff Dezire Trip Private Limited ("DTPL") and Defendants James McCament, Acting Director of United States Citizenship and Immigration Services ("USCIS"); John F. Kelly, Secretary of the Department of Homeland Security ("DHS"); Jefferson B. Sessions III, Attorney General of the United States; Linda Dougherty, Director of the USCIS Seattle Field Office; and

//

//

ORDER - 1

Anne Carsano, the USCIS District Director (collectively, "Defendants").[1] (DTPL Mot. (Dkt. # 14)[2]; Def. Mot. (Dkt. # 15).) The court has considered the parties' submissions, the administrative record, and the applicable law. Being fully advised,[3] the court DENIES DTPL's motion for summary judgment and GRANTS Defendants' motion for summary judgment. Accordingly, the court DISMISSES the administrative appeal and AFFIRMS the August 26, 2016, decision denying the petition.

## II. BACKGROUND

DTPL filed this action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, challenging USCIS's denial of its Form I-129 Petition for a Nonimmigrant Worker Visa on behalf of its co-founder, Himanshu Attri. (Compl. (Dkt. # 1).) DTPL is a travel agency formed and organized in 2013 under the laws of the Republic of India. (Administrative Record ("A.R.") at 99-116.)[4] Mr. Attri, DTPL's 50% owner and a citizen of the Republic of India, entered the United States on a tourist visa in

//

---

[1] The court directs the Clerk to substitute James McCament for former USCIS Director Leon Rodriguez and Jefferson B. Sessions III for former Attorney General of the United States Loretta Lynch. *See* Fed. R. Civ. P. 25(d). Defendants inaccurately named Joseph F. Kelly, rather than John F. Kelly, as Secretary of DHS. (*See* Not. of Appear. (Dkt. # 8) at 1.) The court also directs the Clerk to correct Defendants' typographical error.

[2] DTPL titled its filing "Plaintiff's Opening Brief," but the court refers to the document as DTPL's motion for summary judgment because the court's scheduling order provided for the filing of cross-motions for summary judgment. (*See* Sched. Order (Dkt. # 13) at 1-2.)

[3] Neither party requests oral argument on the motions (*see* DTPL Mot. at 1; Def. Mot. at 1), and the court concludes that oral argument would not be helpful to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[4] The administrative record is filed in physical format under seal. (Not. of Physical Filing (Dkt. # 10).)

1  April 2016.  (*Id.* at 95-96, 109.)  Over the following month, Mr. Attri formed a

2  United States company called Dezire Trip LLC and submitted a business license

3  application to the State of Washington.  (*Id.* at 178-83.)  On May 23, 2016, DTPL filed a

4  Form I-129 on Mr. Attri's behalf, seeking to classify Mr. Attri as an L-1A "intracompany

5  transferee"[5] and extend his stay in the United States until June 30, 2017.  (*Id.* at 66-77.)

6  DTPL indicated, among other things, that it sought an L-1A classification because Mr.

7  Attri would "be opening the U.S. Branch" for DTPL, characterizing Dezire Trip LLC as

8  that branch.  (*Id.* at 75.)

9  USCIS's California Service Center reviewed DTPL's petition and issued a

10 Request for Evidence ("RFE") on May 28, 2016.  The RFE informed DTPL that USCIS

11 required additional information to determine whether Mr. Attri was eligible for L-1A

12 classification.  (*Id.* at 203-11.)  The RFE identified a number of deficiencies with the

13 petition and supporting documentation that DTPL submitted.  (*Id.* at 206-11.)  For each

14 deficiency, the RFE provided a list of documents that DTPL could submit to make the

15 requisite showing.  (*Id.*)  DTPL timely responded to the RFE by submitting several

16 additional documents without explaining their relevance.  (*Id.* at 186-202.)

17 USCIS denied DTPL's petition on August 26, 2016.  (*Id.* at 66.)  By letter dated

18 September 2, 2016, the Director of the California Service Center notified DTPL that

19 USCIS denied the petition on four independent and alternative bases:  DTPL's petition

20 //

---

[5] An L-1A "intracompany transferee" visa allows managers and executives to transfer from a foreign company to its United States branch, subsidiary, or affiliated company to perform temporary services.  8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. § 214.2(l)(1)(ii)(A).

and supporting documentation were insufficient to establish (1) a qualifying relationship between DTPL and Dezire Trip LLC; (2) that Mr. Attri had been employed abroad in a position that was managerial, executive, or involved specialized knowledge; (3) that Dezire Trip LLC had secured sufficient physical premises to house the new office; and (4) that the new office would support Mr. Attri in a primarily managerial or executive position within one year of approval of the petition.  (*Id.* at 48-57.)  DTPL filed a motion for reconsideration of USCIS's decision, which USCIS denied.  (*Id.* at 2, 7-46).  DTPL initiated the instant action under the APA, challenging USCIS's denial of its petition. (*See* Compl.)  The parties agreed that this matter can be resolved on the court's review of the administrative record and filed cross-motions for summary judgment.  (Joint Sched. Prop. (Dkt. # 12) at 1; Sched. Order (Dkt. # 13) at 1; DTPL Mot.; Def. Mot.)  Those cross-motions are now before the court.

### III.   ANALYSIS

**A.   Standard of Review**

DTPL bases its challenge to USCIS's denial on the APA.  (Compl. ¶¶ 1, 16.)  As relevant here, the APA provides that a federal court shall hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[6]  5 U.S.C. § 706(2)(A).  Under this deferential standard of review, "[a]gency action should be overturned only when the agency has 'relied on

---

[6] In its complaint DTPL cites broadly to 5 U.S.C. § 706, which provides several other grounds for compelling agency action or holding agency action unlawful.  (*See* Compl. ¶ 16.) However, DTPL specifically and exclusively relies on 5 U.S.C. § 706(2)(A) in its motion for summary judgment.  (*See generally* DTPL Mot.)

factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In applying this standard, the court's review is based on the administrative record that was before the agency at the time of the agency's decision. *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980). Summary judgment motions are the appropriate mechanism by which the parties ask the court to decide whether, on the basis of the administrative record, the agency action passes muster under the APA. *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769-70 (9th Cir. 1985). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* at 769. Thus the court does not, as it would in ruling on a summary judgment motion in an original district court proceeding, determine whether there is any genuine dispute of material fact. *Good Samaritan Hosp., Corvallis v. Mathews*, 609 F.2d 949, 951 (9th Cir. 1979).

Where USCIS denies a visa petition on multiple grounds, each of which is independently sufficient, a plaintiff will succeed on its challenge only by showing that USCIS abused its discretion with respect to all of the enumerated grounds. *See Spencer Enters., Inc. v. United States*, 229 F. Supp. 2d 1025, 1037 (E.D. Cal. 2001), *aff'd*, 345

//

F.3d 683 (9th Cir. 2003). Conversely, USCIS must show that it had at least one valid ground for denial. *See id.*

## B. Statutory Framework

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, sets forth the criteria under which foreign nationals may receive nonimmigrant visas to lawfully work or reside in the United States. One type of nonimmigrant visa is the L-1A "intracompany transferee" visa, which allows multinational firms to transfer employees from the firm's overseas operations to its operations in the United States. 8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. § 214.2(l)(1)(ii)(A). A petitioner—the employer—seeking to classify a beneficiary—its employee—as an "intracompany transferee" bears the burden of proving eligibility for L-1A status. 8 U.S.C. § 1361; *see also* 8 C.F.R. § 214.2(l)(1)(i). The petitioner must file Form I-129 with USCIS on behalf of the alien whom it seeks to employ. 8 C.F.R. § 214.2(l)(2)(i). USCIS adjudicates the petition and makes an eligibility determination under the INA and the relevant regulations at 8 C.F.R. § 214.2(l). *Abiodun v. Gonzales*, 461 F.3d 1210, 1211 (10th Cir. 2006) (citing 6 U.S.C. § 271(b)).

The INA and its implementing regulations require an alien granted an L-1A visa to be employed in a managerial or executive capacity by the entity sponsoring his or her petition for a continuous period of at least one year within the three years preceding the petition. 8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. § 214.2(l)(3)(iii)-(iv). In addition, the noncitizen must "seek[] to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity

that is managerial, executive, or involves specialized knowledge." 8 U.S.C. § 1101(a)(15)(L). Specifically, the implementing regulations require a petitioner to establish that the petitioner and the organization that will employ the alien meet one of the "qualifying relationships" defined in the regulations: "parent, branch, affiliate or subsidiary." 8 C.F.R. §§ 214.2(l)(1)(ii)(G)(1), 214.2(l)(3)(i).

If the alien or beneficiary is coming to the United States to open or be employed in a "new office," the regulations require the petitioner to make additional showings. *Id.* § 214.2(l)(3)(v). As relevant here, the petitioner must submit evidence that "sufficient physical presence to house the new [United States] office have been secured" and that the "United States operation, within one year of the approval of the petition, will support an executive or managerial position." *Id.*

**C.     USCIS's Grounds for Denying DTPL's Form I-129**

USCIS denied DTPL's petition for four alternative and independent reasons. (A.R. at 48-57.) Because DTPL has not met its burden to show that USCIS's decision was arbitrary and capricious with respect to all of the enumerated reasons, the court affirms the decision of USCIS. *See Spencer Enters.*, 229 F. Supp. 2d at 1037.

1. <u>Qualifying Relationship</u>

The first ground USCIS cited for denying DTPL's petition is the lack of a qualifying relationship between DTPL and Dezire Trip LLC. (A.R. at 49); 8 C.F.R. §§ 214.2(l)(3)(i), 214.2(l)(1)(ii)(G)(1). USCIS concluded DTPL did not meet this requirement because DTPL's petition indicated that Dezire Trip LLC is the parent of DTPL but provided no evidence to establish that relationship. (A.R. at 49.) DTPL

contends that USCIS's denial of the petition on this ground was arbitrary and capricious for two reasons: (1) USCIS mischaracterized the LLC as the parent company of DTPL, and (2) DTPL presented overwhelming evidence establishing that Dezire Trip LLC is the subsidiary of DTPL. (DTPL Mot. at 5-6.) DTPL's contentions are not supported by the administrative record or legal authority, and the court concludes that USCIS's denial of DTPL's petition on this ground was not arbitrary or capricious.

First, DTPL contends that USCIS mischaracterized DTPL's petition by stating that Dezire Trip LLC purported to be the parent company of DTPL. (*Id.* at 5.) DTPL contends this was a "completely inaccurate reading of the petition's most basic request" that demonstrates USCIS "did not take any time to adequately consider or objectively review [DTPL's] petition and the supporting documentation." (*Id.*) Contrary to DTPL's assertions, DTPL's petition is ambiguous as to the purported qualifying relationship. In response to one question, DTPL's petition suggests that Dezire Trip LLC may be the parent of DTPL. (*See* A.R. at 75 (responding to the question, "How is the U.S. company related to the company abroad?" with the answer "Parent").) Elsewhere in its petition, DTPL suggests that Dezire Trip LLC is the subsidiary rather than the parent of DTPL, stating that "Dezire Trip Private Limited has a 100% ownership interest in Dezire Trip LLC." (*Id.* at 76). In response to a third question, DTPL states that "Dezire Trip LLC will be the U.S. branch for Dezire Trip Private Limited." (*Id.* at 75). Because "parent," "subsidiary," and "branch" have separate and distinct meanings under the regulations, DTPL's petition can be read as internally contradictory with respect to the purported qualifying relationship.

After reviewing DTPL's petition, USCIS sent DTPL an RFE, informing DTPL that the petition and supporting documentation were insufficient to establish a qualifying relationship and providing a list of documents that would satisfy the requirement. (*Id.* at 206-07.) In response to the RFE, DTPL did not include any of these documents or provide any explanation or clarification about the purported qualifying relationship. (*Id.* at 186-202.) In light of the internal contradictions in DTPL's petition and DTPL's failure to clarify these contradictions in response to the RFE, the court cannot conclude that USCIS "'offered an explanation for its decision that runs counter to the evidence before the agency.'" *Pac. Coast Fed'n of Fishermen's Ass'n*, 265 F.3d at 1034 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

Notwithstanding these inconsistent representations, DTPL contends that USCIS's decision was arbitrary and capricious because DTPL submitted overwhelming evidence that Dezire Trip LLC is the subsidiary of DTPL. (DTPL Mot. at 6.) DTPL relies on "evidence concerning [Mr.] Attri's common ownership and stake in both companies"— specifically, evidence that Mr. Attri fully owns Dezire Trip LLC and owns half of DTPL. (DTPL Mot. at 6; DTPL Resp. (Dkt. # 16) at 3.) To support its petition, DTPL submitted what it describes as a print out from the Washington Secretary of State's website showing that Mr. Attri is the sole member of Dezire Trip LLC. (DTPL Resp. at 3 n.1; A.R. at 182-83.) DTPL also submitted a document called "Memorandum and Articles of Association" for DTPL showing that Mr. Attri owns 5,000 out of 10,000 shares in DTPL. (A.R. at 99-116.)

//

Evidence that Mr. Attri has a stake in both companies, however, does not establish a qualifying parent-subsidiary relationship. A "subsidiary" is

> a firm, corporation, or other legal entity of which a parent owns, directly or indirectly, more than half of the entity and controls the entity; or owns, directly or indirectly, half of the entity and controls the entity; or owns, directly or indirectly, 50 percent of a 50–50 joint venture and has equal control and veto power over the entity; or owns, directly or indirectly, less than half of the entity, but in fact controls the entity.

8 C.F.R. § 214.2(l)(1)(ii)(K). Under this definition, DTPL and Dezire Trip LLC do not have a parent-subsidiary relationship because DTPL does not own or control any shares in Dezire Trip LLC. *See Olamide Olorunniyo Ore v. Clinton*, 675 F. Supp. 2d 217, 219 (D. Mass. 2009) (holding that, notwithstanding their common ownership, two companies did not have a parent-subsidiary relationship because neither controlled or owned shares in the other). Rather, according to DTPL's own representations, supported by the evidence in the record, Mr. Attri is the sole owner of Dezire Trip LLC.[7] (DTPL Resp. at 3; A.R. at 76, 182-83.) USCIS's conclusion that DTPL failed to demonstrate a qualifying relationship between DTPL and Dezire Trip LLC is thus well supported by the administrative record, and USCIS's decision to deny DTPL's petition on this ground was not arbitrary and capricious.

//
//
//

---

[7] As noted above, DTPL made a contradictory assertion in its petition, which it repeats in its complaint but not in its motion for summary judgment, that "Dezire Private Trip Limited has a 100% ownership interest in Dezire Trip LLC." (A.R. at 76; Compl. ¶ 11; DTPL Mot.) However, DTPL provided no evidence to support this assertion. (*See* A.R. at 66-184.)

2.  Year Abroad

Although the court's conclusion above is independently sufficient to affirm USCIS's denial, several of USCIS's alternative reasons for denying DTPL's petition are also well supported. USCIS also cited DTPL's failure to provide any evidence that Mr. Attri was employed on a full-time basis for at least one year in a managerial or executive capacity abroad. 8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. § 214.2(l)(3)(iv), (v)(B); (A.R. at 49-52.) DTPL's petition states that Mr. Attri "opened [DTPL] in 2013 with his brother" and has "operated all financial and business aspects of the company." (A.R. at 75.) In its RFE, USCIS informed DTPL that its petition failed to show that Mr. Attri worked in a managerial or executive capacity abroad, and USCIS provided a list of documents that DTPL could submit to remedy the deficiency. (*Id.* at 208-09.) These documents included "[c]opies of the beneficiary's training, pay, or other personnel records" and a letter from a DTPL representative describing "the beneficiary's typical managerial duties, and the percentage of time spent on each." (*Id.*) DTPL did not provide any of the documents listed in the RFE. (*See id.* at 186-202.)

USCIS did not abuse its discretion in finding that DTPL's cursory description of Mr. Attri's responsibilities was insufficient to meet DTPL's burden. *See, e.g.*, *Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1070-71 (9th Cir. 2008) (affirming an agency determination that the L-1A beneficiary was not acting in a managerial capacity at the time of the petition to extend his visa where the petition "maintain[ed] that [the beneficiary] was responsible for overseeing . . . domestic and international sales and its distribution chains. . . . [y]et the documents submitted to the agency [did] not describe

with particularity what such duties entailed"); *see also Saga Overseas, LLC v. Johnson*, 200 F. Supp. 3d 1341, 1348 (S.D. Fla. 2016) (quoting *Fedin Bros. Co. v. Sava*, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989)) ("General descriptions are inadequate to satisfy the implementing regulations because . . . '[t]he actual duties themselves reveal the true nature of the employment.'").

DTPL argues that Mr. Attri was employed in a managerial or executive capacity abroad because "he was one of only two people to run [DTPL] from India and . . . he held wide discretion to make decisions relating to the management of [DTPL]." (DTPL Resp. at 3.) This assertion, however, is not in the administrative record and merely constitutes another cursory description of Mr. Attri's responsibilities that is insufficient to meet DTPL's burden. Moreover, courts have concluded that the employee of a company that employs only one other person is less likely to work in a managerial or executive capacity because he will have to be significantly involved in non-managerial and non-executive tasks "simply because there is nobody else to carry out these duties." *Fedin Bros. Co.*, 724 F. Supp. at 1109; *see Niagara Handpiece, Ltd. v. U.S. Citizenship & Immigration Servs.*, No. 05-CV-667S, 2006 WL 2792292, at *6 (W.D.N.Y. Sept. 27, 2006) (affirming an agency decision that the intended beneficiary was not employed in a primarily managerial or executive capacity because the company had no other employees and thus he was "required to perform nearly all of the company's operational tasks"). USCIS's conclusion that DTPL did not establish that Mr. Attri was employed for at least one year in a managerial or executive capacity abroad was not arbitrary or capricious.

//

### 3. Managerial or Executive Position Within One Year

USCIS also did not abuse its discretion in denying DTPL's petition on the ground that DTPL failed to demonstrate that the new office in the United States will support a managerial or executive position within one year of the approval of the petition. (A.R. at 53-54.) To demonstrate that a new office will support an executive or managerial position within one year, the regulations require information regarding:

> (1) The proposed nature of the office describing the scope of the entity, its organizational structure, and its financial goals;
> (2) The size of the United States investment and the financial ability of the foreign entity to remunerate the beneficiary and to commence doing business in the United States; and
> (3) The organizational structure of the foreign entity.

8 C.F.R. § 214.2(l)(3)(v). DTPL did not provide any such information with its petition. (*See* A.R. at 66-67.) In its RFE, USCIS provided a list of documents that DTPL could submit to satisfy this requirement, including "[a]n original letter from the foreign entity explaining the need for the new office in the United States"; "[a] copy of a feasibility study . . . by which the foreign parent company determined the need for, and the probability that the proposed U.S. company would support a manager or executive within one year of approval of the petition"; "[a] copy of the business plan . . . for commencing the start-up of the new office"; or "[d]ocuments showing the foreign entity paid for services to start business at the U.S. location[, which could] include evidence of vendor contracts, utilities, . . . etc." (*Id.* at 209-10.) DTPL did not provide any of these documents in its response to the RFE. (*Id.* at 186-202). Although DTPL submitted DTPL's business bank account statements and its fiscal year 2015-16 balance sheet,

ORDER - 13

DTPL did not provide any explanation that would indicate whether and how these documents make the requisite showing. (*Id.*)

DTPL instead relies on Mr. Attri's personal bank account statements "and copies of contracts with vendors" that allegedly "showed [Mr.] Attri handling all of [the] LLC's financial operations" and additional evidence purporting to show that Mr. Attri "was the one who purchased inventory . . . and obtained office space for [Dezire Trip LLC]." (DTPL Mot. at 6-7.) DTPL also contends that its documentation showed that Mr. Attri "was already in the process of obtaining clientele for [the] LLC." (DTPL Resp. at 4.) The bank account statements and vendor contracts on which DTPL relies are not properly before the court because DTPL submitted them to USCIS with its motion for reconsideration. (*See* A.R. at 26-45); 8 C.F.R. § 103.5(a)(3) (providing that motions for reconsideration must establish that USCIS's decision was incorrect "based on the evidence of record at the time of the initial decision"); *Asarco*, 616 F.2d at 1159 (stating the district court's review is limited to the administrative record that was before the agency at the time of the agency's decision). Moreover, even if the court were to consider that evidence together with the evidence that is properly before the court, the evidence suggests that Mr. Attri has spent time performing duties for Dezire Trip LLC that are not primarily executive or managerial, including ordering supplies, obtaining office space, and paying for telephone service. (*See* A.R. at 27, 44-45, 83-87); *see Matter of Church Scientology Int'l*, 19 I. & N. Dec. 593, 604 (BIA 1988) ("An employee who primarily performs the tasks necessary to produce a product or to provide services is not considered to be employed in a managerial or executive capacity."). USCIS reasonably

denied DTPL's petition on the ground that it failed to establish that Dezire Trip LLC's new office in the United States would be able to support an executive or managerial position in one year.[8]

## IV. CONCLUSION

Based on a review of the administrative record, the court concludes that USCIS's decision to deny DTPL's I-129 Petition was not arbitrary or capricious. The court therefore DENIES DTPL's motion for summary judgment (Dkt. # 14) and GRANTS Defendants' motion for summary judgment (Dkt. # 15). The court DISMISSES the administrative appeal and AFFIRMS USCIS's August 26, 2016, decision denying the petition. Finally, the court DIRECTS the Clerk to update the docket to reflect substitution of government officials sued in their official capacities and correct the name of defendant John F. Kelly. *See supra* n.1.

Dated this 20th day of July, 2017.

JAMES L. ROBART
United States District Judge

---

[8] The court expresses no opinion on USCIS's final reason for denying DTPL's petition—the failure to establish that Dezire Trip LLC secured sufficient physical premises to house the new office. (*See* A.R. at 52-53.)